**FILED - GR**
May 26, 2009 3:10 PM
TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: _ald___/_____

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

v.

MARK R. HAMLIN,
KINGDOM FIRST TRADING, LLC, and
KINGDOM FIRST CORP.

    Defendants,

_____/

CIVIL ACTION No.

HON.

**1:09-cv-483**
**Paul L Maloney**
**Chief U.S. District Judge**

## COMPLAINT

Plaintiff, Securities and Exchange Commission ("Commission"), alleges and states as follows:

### NATURE OF THE ACTION

1. This matter involves fraudulent misrepresentations in the unregistered offer and sale of securities by Defendant Mark R. Hamlin ("Hamlin") and his two companies, Defendant Kingdom First Corp. and Defendant Kingdom First Trading, LLC ("Kingdom First Trading").

2. From approximately April 2005 through June 2008, Hamlin, individually, and through Kingdom First Corp., offered and sold securities to at least 90 investors and raised approximately $2 million.

3.  Hamlin represented to investors that he was a day trader and that he would invest their funds, along with other investors' funds, in the stock market. Hamlin described his day trading strategy as one in which he closed out all open positions at the end of the day and told some investors that he only invested in stocks.

4.  Hamlin also told some investors that he could double their money, represented to other investors that he had earned past investment returns exceeding 100%, and told certain investors that they would not lose their money.

5.  Hamlin, who acted as an unregistered investment adviser, also represented that he would send the investors weekly reports of his trading and their profits or losses and that he would not receive a commission or any other financial benefit unless the investments were profitable. In the weekly trading reports, Hamlin represented that the investors earned profits in all but seven weeks of trading during the period in question.

6.  Hamlin's representations regarding his use of investor funds, trading profits, and trading strategy were all false.

7.  Contrary to his representations, Hamlin invested only $1,248,370 of the approximately $2 million that he received from the investors. Further, Hamlin subsequently transferred approximately $627,000 of investor funds from his and Kingdom First Trading's brokerage accounts into his bank accounts and used this money, along with the $759,000 in investor funds that he never invested, to meet $755,000 in investor withdrawal requests and to pay $668,000 in personal expenses.

8. Moreover, from April 2005 through June 2008, Hamlin's trading resulted in losses of approximately $644,862. Hamlin's trading was profitable during only nine of the 39 months of the offering, and generated a total of only $22,150 in profit for those months.

9. Further, Hamlin did not close out all open securities positions at the end of the day, and, beginning in July 2006, Hamlin frequently traded options.

10. Hamlin, Kingdom First Corp., and Kingdom First Trading, LLC ("Kingdom First Trading"), directly and indirectly, have engaged, and unless enjoined, will continue to engage, in acts, transactions, practices and courses of business that violate Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5].

11. Hamlin and Kingdom First Corp., directly and indirectly, have also engaged, and unless enjoined, will continue to engage, in acts, transactions, practices and courses of business that violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c)], and Kingdom First Corp., directly and indirectly, has also engaged, and unless enjoined, will continue to engage, in acts, transactions, practices and courses of business that violate Section 7(a) of the Investment Company Act of 1940 ("ICA")[15 U.S.C. § 80a-7(a)]. Hamlin directly and indirectly, has also engaged, and unless enjoined, will continue to engage, in acts, transactions, practices and courses of business that violate Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1), 80b-6(2)].

12. The Commission brings this action to enjoin such acts, transactions, practices, and courses of business pursuant to Section 20(a) of the Securities Act [15 U.S.C. §78t(a)], Sections

21(d) and (e) of the Exchange Act [15 U.S.C. §§ 78u(d) and (e)], Section 42(d) of the ICA [15 U.S.C. §80a-42(d)], and Section 209(d) of the Advisers Act [15 U.S.C. §80b-9(d)].

## DEFENDANTS

13.     **Mark R. Hamlin** is 28 years old and resides in Owosso, Michigan. Hamlin is the owner and President of Defendants Kingdom First Corp. and Kingdom First Trading. From April 2005 until he formed Kingdom First Corp. in January 2007, Hamlin offered and sold investments in the investment program under his own name.

14.     **Kingdom First Corp.** is an Okemos, Michigan corporation that Hamlin formed in January 2007. After Kingdom First Corp.'s formation, Hamlin offered and sold investments in his investment program through Kingdom First Corp. Kingdom First Corp. has no business purpose other than as the entity through which Hamlin operated the program.

15.     **Kingdom First Trading, LLC** is an Okemos, Michigan limited liability company that Hamlin formed in January 2007. Hamlin invested investor funds in bank and brokerage accounts in the name of Kingdom First Trading and sent out weekly account statements to investors on behalf of Kingdom First Trading. Kingdom First Trading has no other business purpose.

## JURISDICTION

16.     This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], Sections 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(e) and 78aa], Section 44 of the ICA [15 U.S.C. 80a-43], and Section 214 of the Advisers Act [15 U.S.C. §80b-14]. Venue is proper in this Court pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], Section 27 of the Exchange Act [15 U.S.C. §78aa], Section 44 of the ICA [15 U.S.C. 80a-43], and Section 214 of the Advisers Act [15 U.S.C. §80b-14].

4

17.  The Defendants inhabited and transacted business in the Western District of Michigan and the acts, transactions, practices, and courses of business constituting the violations alleged herein occurred within the jurisdiction of the United States District Court for the Western District of Michigan and elsewhere.

18.  Defendants, directly and indirectly, have made use of the means and instrumentalities of interstate commerce, the means and instruments of transportation and communication in interstate commerce, and the mails, in connection with the acts, transactions, practices, and courses of business alleged herein.

## FACTS

### DEFENDANTS' PUBLIC SOLICITATION OF INVESTORS

19.  From approximately April 2005 through June 2008, Defendants Hamlin and Kingdom First Corp. offered and sold securities in the form of investment contracts. The securities were offered first through Hamlin and later through Kingdom First Corp. (collectively, the "Hamlin/Kingdom First program.")

20.  Through their offering, Hamlin and Kingdom First Corp. raised approximately $2 million from approximately 90 investors.

21.  The majority of investors reside in Michigan with at least one investor residing in Canada.

22.  Beginning in April 2005, Hamlin solicited investors in person.

23.  In January 2008, Hamlin began soliciting investors through an Internet website at www.kingdomfirsttrading.com. Hamlin wrote the content for the website, which was available to the general public until approximately June 2008.

5

24. No valid registration statement was filed or was in effect with the Commission in connection with Hamlin's and Kingdom First Corp.'s offer and sale of investment contracts in the Hamlin/Kingdom First program.

25. Neither Hamlin nor anyone else on his behalf determined whether the Hamlin/Kingdom First investors were accredited investors. Several Hamlin/Kingdom First investors had net worths of less than $1 million and/or annual incomes of less than $200,000 at the time they invested in the Hamlin/Kingdom First program.

26. Neither Hamlin nor Kingdom First Corp. nor anyone else acting on their behalf gave the Hamlin/Kingdom First investors any financial information about themselves or the Hamlin/Kingdom First program.

27. Hamlin represented to investors that he was a day trader that pooled all of his investors' funds together and invested them in the stock market. Hamlin told investors that he traded only stocks and not other securities or investments. He told investors that he sold the stock that he purchased at the end of each day to minimize risk, and that therefore he did not hold any stock positions overnight.

28. On the Kingdom First Trading website, Hamlin represented that he was a "day trader" that "pools everyone's money." Hamlin claimed that he was "flat (not holding onto any positions) each night" when the market closed in order to "take[] out some of the risks involved."

29. Hamlin told several investors that his past trading had generated annual returns in excess of 100%. Hamlin showed several investors charts of his past trading that showed returns in excess of 100%. On the Kingdom First website, Hamlin represented that his trading earned

the following returns over the past three and a half years: 131% in 2005, 116% in 2006, 50% in 2007, and 17.22% year-to-date as of April 28, 2008.

30. From April 2005 until approximately January 2007, investors who chose to invest with Hamlin signed an "Investment Agreement" between themselves and Hamlin, as the "Stock Trader." After Hamlin incorporated Kingdom First Corp. in January 2007, investors signed an Investment Agreement between themselves and Kingdom First Corp., as the "Stock Trader." Hamlin signed the agreement on behalf of Kingdom First Corp. as its owner. The Hamlin and Kingdom First Corp. Investment Agreements were otherwise identical.

31. Pursuant to both versions of the Investment Agreement, investors agreed to invest money with the "Stock Trader," and the "Stock Trader promise[d] to invest this Investment in the stock market" and "to issue the Investor a report at the end of each week, showing the changes to the Investment from the investing."

32. The Agreement also provided that if the investment increased in value, the investor would "pay a commission to the Stock Trader of twenty percent (20%) of the resulting profits" but that if the value of the investment decreased, "the Stock Trader will gain nothing."

33. Hamlin did not maintain separate accounts for each Hamlin/Kingdom First investor. Hamlin deposited investor funds into bank accounts that he controlled. Hamlin then directed the transfer of some of the money from those bank accounts into brokerage accounts that he controlled in which all the investor funds were pooled together.

34. After an investor invested in the Hamlin/Kingdom First program, Hamlin sent the investor weekly trading reports that included the amount of the investor's investment, the inception date, the amount of gross profit since inception, the investor's purported profit or loss

as a result of Hamlin's trading for the week, and the percentage of Hamlin's purported profit or loss compared to the Dow Jones Industrial Average, the Nasdaq, and the S&P 500. The weekly reports first were sent out under the name of Hamlin and later under the name of Kingdom First Trading after its incorporation in January 2007.

35.     The weekly trading reports showed that the Hamlin/Kingdom First program made a profit for investors in 151 out of 158 weeks.

36.     Pursuant to the Investment Agreement, investors could withdraw their funds by giving Hamlin two business days notice. Otherwise, the investors' funds would continue to be reinvested by Hamlin.

37.     Several investors requested a withdrawal of some of their money. Many investors, however, left their money invested in the Hamlin/Kingdom First program.

38.     As a result of Hamlin's representations of consistent gains, many investors made additional investments and recommended Hamlin and his program to their family, friends, and co-workers.

## DEFENDANTS' MISREPRESENTATIONS AND MISLEADING OMISSIONS

39.     Throughout the period from April 2005 through June 2008, Hamlin, on behalf of himself, Kingdom First Corp., and Kingdom First Trading, misrepresented material facts and failed to disclose material facts regarding the Hamlin/Kingdom First program in communications to investors and prospective investors and on the Kingdom First Trading website.

## Use of Offering Proceeds

40.     Contrary to his representations, Hamlin did not invest all the funds he received from investors in the stock market. Hamlin sent only $1,248,370 of the $2 million he raised to his and Kingdom First Trading's brokerage accounts for investment.

41.     Hamlin transferred approximately $627,000 from his and Kingdom First Trading's brokerage accounts back to his bank accounts. He used this money, along with the $759,000 of investor funds that he never invested, to pay $755,000 to investors who asked for their money back and to pay $668,000 for his personal expenses.

42.     Hamlin used investor funds to pay, among other things, $66,150 for rent and other rent related payments, $67,919 for automobiles, $12,708 for jewelry, $14,185 for his wedding, $9,543 for vacations and travel, and $58,553 for cash withdrawals.

## Profitability of Investments in Kingdom First

43.     Hamlin's representations to investors that his investments were profitable were also false. Hamlin's investments realized losses of $18,118 in 2005, $267,372 in 2006, $218,591 in 2007, and $140,781 from January 2008 through June 2008. His trading was profitable during only nine of the 39 months of the offering, generating a total of $22,150 in profit.

44.     Hamlin finally admitted in a July 2008 letter to all his investors that "The results of my trading have been very bad and the account has been closed. My trading has lost everything, including your investment."

### Hamlin's Investment Strategy

45. Hamlin also misrepresented that he invested only in stocks, and that he sold all of the stock that he purchased at the end of each day and therefore did not hold any stock positions overnight.

46. These statements were false because Hamlin invested in options with the investors' money beginning in July 2006 and maintained open positions in several securities, including one for over three weeks.

### COUNT I

### Violations of Section 5(a) and (c) of the Securities Act
### [15 U.S.C. § 77e(a) and (c)]

47. Paragraphs 1 through 46 above are re-alleged and incorporated herein by reference.

48. By their conduct, Hamlin and Kingdom First Corp., directly or indirectly: (i) made use of means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of a prospectus or otherwise, securities as to which no registration statement was in effect; (ii) for the purpose of sale or delivery after sale, carried or caused to be carried through the mails or in interstate commerce, by any means or instruments of transportation, securities as to which no registration statement was in effect; and (iii) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy, through the use or medium of a prospectus or otherwise, securities as to which no registration statement had been filed.

49. No valid registration statement was filed or was in effect with the Commission in connection with Hamlin's and Kingdom First Corp.'s offer and sale of securities in the Kingdom First program.

50. By reason of the foregoing, Hamlin and Kingdom First Corp. violated Sections 5(a) and (c) of the Securities Act [15 U.S.C. § 77e(a) and (c)].

## COUNT II

### Violations of Section 17(a)(1) of the Securities Act
### [15 U.S.C. § 77q(a)(1)]

51. Paragraphs 1 through 46 above are re-alleged and incorporated herein by reference.

52. By their conduct, Hamlin, Kingdom First Corp., and Kingdom First Trading, in the offer or sale of securities in the Hamlin/Kingdom First program, by the use of the means or instruments of transportation or communication in interstate commerce and by the use of the mails, directly or indirectly, have employed devices, schemes or artifices to defraud.

53. Hamlin, Kingdom First Corp., and Kingdom First Trading acted with scienter.

54. By reason of the foregoing, Hamlin, Kingdom First Corp., and Kingdom First Trading violated Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT III

### Violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act
### [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)]

55. Paragraphs 1 through 46 above are re-alleged and incorporated herein by reference.

56. By their conduct, Hamlin, Kingdom First Corp., and Kingdom First Trading, in the offer or sale of securities in the Hamlin/Kingdom First program, by the use of the means or instruments of transportation and communication in interstate commerce and by the use of the

11

mails, directly or indirectly, have obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or have engaged in transactions, practices or courses of business which have operated as a fraud or deceit upon purchasers of securities in the Hamlin/Kingdom First program.

57.     By reason of the foregoing, Hamlin, Kingdom First Corp., and Kingdom First Trading violated Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)].

## COUNT IV

### Violations of Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 Thereunder [17 C.F.R. § 240.10b-5]

58.     Paragraphs 1 through 46 above are re-alleged and incorporated herein by reference.

59.     By their conduct, Hamlin, Kingdom First Corp., and Kingdom First Trading, in connection with the purchase or sale of securities in the Hamlin/Kingdom First program, by the use of the means or instrumentalities of interstate commerce or by the use of the mails, directly or indirectly: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, or courses of business which operated as a fraud or deceit upon other persons, including purchasers and sellers of such securities.

60.     Hamlin, Kingdom First Corp., and Kingdom First Trading acted with scienter.

12

61. By reason of the foregoing, Hamlin, Kingdom First Corp., and Kingdom First Trading violated Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5].

## COUNT V

### Violations of Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1), 80b-6(2)]

62. Paragraphs 1 through 46 above are re-alleged and incorporated herein by reference.

63. By reason of the foregoing, Hamlin, directly and indirectly, by the use of the means and instrumentalities of interstate commerce and by the use of the mails, while acting as an investment adviser: (a) with scienter, employed devices, schemes, and artifices to defraud advisory clients or prospective advisory clients; and (b) engaged in transactions, practices, or courses of business which operated as a fraud or deceit upon clients or prospective clients.

64. By reason of the foregoing, Defendant Hamlin violated Sections 206(1) and (2) of the Advisers Act [15 U.S.C. §80b-6(1) and (2)].

## COUNT VI

### Violations of Section 7(a) of the ICA [15 U.S.C. § 80a-7(a)]

65. Paragraphs 1 through 46 above are re-alleged and incorporated herein by reference.

66. From January 2007 until June 2008, Kingdom First Corp. acted as an investment company as defined in Section 3(a) of the ICA [15 U.S.C. §80a-3(a)].

67. By reason of the activities described above, Defendant Kingdom First Corp., while acting as an investment company, directly and indirectly, offered, purchased and sold, redeemed

13

or retired securities by the use of the mails and the means and instrumentalities of interstate commerce and engaged in business in interstate commerce.

68. At no time was Kingdom First Corp. registered with the Commission as an investment company as is required by Section 8 of the ICA [15 U.S.C. §80a-8].

67. By reason of the foregoing, Defendant Kingdom First Corp. violated Section 7(a) of the ICA [15 U.S.C. §80a-7(a)].

## **PRAYER FOR RELIEF**

**WHEREFORE,** the Commission respectfully requests that the Court enter a judgment:

A. Permanently enjoining Hamlin, his agents, servants, employees, attorneys, and all person in active concert or participation with him, and each of them, from further violations of Sections 5(a), 5(c), 17(a)(1), (2) and (3) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c), 77q(a)(1), (2) and (3)]; Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. §240.10b-5]; and Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1), 80b-6(2)];

B. Permanently enjoining Kingdom First Corp., its officers, agents, servants, employees, attorneys, and all person in active concert or participation with them, and each of them, from further violations of Sections 5(a), 5(c), 17(a)(1), (2) and (3) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c), 77q(a)(1), (2) and (3)]; Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. §240.10b-5]; and Section 7(a) of the ICA [15 U.S.C. § 80a-7];

C.  Permanently enjoining Kingdom First Trading, its officers, agents, servants, employees, attorneys, and all person in active concert or participation with them, and each of them, from further violations of Sections 17(a)(1), (2) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(1), (2) and (3)]; Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)], and Rule 10b-5 promulgated thereunder [17 C.F.R. §240.10b-5];

D.  Ordering the Defendants to disgorge their ill-gotten gains, derived directly or indirectly from the conduct complained of herein, together with prejudgment interest thereon;

E.  Ordering Hamlin to pay an appropriate civil monetary penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. §77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C. §80b-9(e)];

F.  Retaining jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and to carry out the terms of all orders and decrees that may be entered or to entertain any suitable application or motion for additional relief within the jurisdiction of the Court; and

G.  Granting such further relief as the Court may deem appropriate.

Respectfully submitted,

DATED: May 26, 2009

/s/ Steven L. Klawans
Steven L. Klawans
Jennifer L. Hieb
Attorneys for Plaintiff
U.S. Securities and Exchange Commission
175 West Jackson Boulevard, Suite 900
Chicago, IL 60604
Telephone: (312) 886-1738 (Klawans)

15

Telephone: (312) 353-7411 (Hieb)
Facsimile: (312) 353-7398
E-mail: KlawansS@sec.gov
E-mail: HiebJ@sec.gov

Donald A. Davis
United States Attorney

DATED: 5/26/09

W. Francesca Ferguson
Assistant U.S. Attorney
P.O. Box 208
Grand Rapids, MI 49501-0208
Telephone: (616) 456-2404
Facsimile: (616) 456-2510
E-mail: Francesca.ferguson@usdoj.gov

16